1

2

3

4

5

6

7                 **UNITED STATES DISTRICT COURT**

8                    **DISTRICT OF NEVADA**

9

10 | CHURCHILL COUNTY, *et al*.,

11 |      Plaintiffs,                          Case No. 3:09-cv-00170-LDG (WGC)

12 | v.                                   **ORDER**

13 | UNITED STATES DEPARTMENT OF
THE INTERIOR, *et al*.,

14

     Defendants.

15

16         The plaintiffs–Churchill County, City of Fallon, and the Truckee-Carson Irrigation

17 District–brought this action alleging that the defendants–the United States Department of

18 the Interior, the Secretary of the Interior, the United States Bureau of Reclamation, and the

19 Commissioner of Reclamation--violated the Administrative Procedures Act (APA), the

20 National Environmental Policy Act (NEPA), and the Federal Advisory Committee Act

21 (FACA) in approving and signing the Truckee River Operating Agreement (TROA) and

22 promulgating it as a federal regulation.  Presently before the Court is the plaintiffs' Motion

23 to Supplement the Administrative Record and to Require the Defendants to Provide an

24 Annotated Environmental Impact Statement Linked to Documents in the Administrative

25 Record (#74).  The defendants oppose the motion (## 79, 80), joined by the intervening

26

1   parties[1] (## 81, 82, 83).  Following a hearing on the motion, and with leave of the Court, the

2   defendants filed a corrected DVD of the administrative record (#88), the plaintiffs filed a

3   response (#89), and the defendants (again joined by the intervenors) filed a reply (## 90,

4   91, 92, 93, 94).

5          As the parties previously agreed, "[j]udicial review of TROA and the Secretary's

6   decision to approve TROA will be based on the administrative record."  Docket #17, at 3.

7   This agreement was consistent with Section 205(a)(2) of the Truckee-Carson-Pyramid

8   Lake Water Rights Settlement Act of 1990, Title II, Public Law 101-618, 32 Stat. 3294,

9   3306 (the Settlement Act), which provides that "[j]udicial review of any such promulgation of

10  [TROA] may be had by any aggrieved party . . . in the United States District Court for the

11  District of Nevada. . . . The scope of such review shall be limited to the administrative

12  record and the standard of review shall be that prescribed in 5 U.S.C. 706(2)(A)-(D)."

13         The APA limits judicial review to "[a]gency action made reviewable by statute and

14  final agency action." 5 U.S.C. § 704; *Norton v. S. Utah Wilderness Alliance*, 542

15  U.S. 55, 61-62 (2004).  When reviewing agency action under the APA, courts are usually

16  limited to consideration of the administrative record that was before the agency when it

17  made the challenged decision. 5 U.S.C. § 706; *Animal Defense Council v. Hodel*, 840 F.2d

18  1432, 1435-6 (9th Cir. 1988) (judicial review of agency action in preparing an

19  Environmental Impact Statement under NEPA is also governed by the APA).  The "focal

20  point" for judicial review is "the administrative record already in existence, not some new

21  record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

22  Under section 706 of the APA, the Court "shall review the whole record or those parts of it

23  cited by a party." 5 U.S.C. § 706. The "whole record," in turn, means the full administrative

24

25         [1]    The following parties have been permitted to intervene: Washoe County
    Water Conservation District, Truckee Meadows Water Authority, Pyramid Lake Paiute
26  Tribe, and City of Fernley.

                                           2

1   record compiled by the agency in support of the decision at issue. *Citizens to Preserve*

2   *Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). It includes "all documents and

3   materials directly or *indirectly* considered by agency decision makers." *Thompson v. U.S.*

4   *Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotations omitted, emphasis in

5   original).

6        Initially, the Court would note that the defendants have not opposed supplementing

7   the administrative record with certain documents proposed by the plaintiffs, which

8   documents are identified as the following exhibits to the plaintiffs' motion: 35, 45, 82, 94,

9   161, 170, 172, 181, 182, 184, 198, 218, 219, 277, 298, 313, and 318.  The Court will grant

10  the motion to supplement the administrative record as to these 17 documents.  In addition,

11  the defendants assert that the following exhibits to the plaintiffs' motion are already

12  included within the administrative record: 33, 41, 50, 79, 118, 145, 151, 158, 162, 185, 186,

13  187, 200, 201, 202, 203, 204, 206, 216, 224, 226, 245, 250, 252, 260, 264, 303, and 304.

14  Though adding these 28 exhibits to the administrative record will result in a duplication of

15  documents, out of an abundance of caution the Court will also grant the motion to

16  supplement as to these 28 documents.

17       A court may allow supplementation of an administrative record in only four

18  circumstances: (1) "if admission [of extra-record evidence] is necessary to determine

19  'whether the agency has considered all relevant factors and has explained its decision,'" (2)

20  "if the agency has relied on documents not in the record," (3) "when supplementing the

21  record is necessary to explain technical terms or complex subject matter," and (4) "when

22  plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019,

23  1030 (9th Cir. 2005) (internal quotations omitted).  These four circumstances are to be

24  "narrowly construed and applied." *Id.*

25       Though the plaintiffs recognize these four exceptions in their motion, and further

26  note that some NEPA actions can "be determined only by looking outside the

3

1  administrative record to see what the agency may have ignored," *Animal Defense Council,*

2  840 F.2d at 1437, their motion fails to establish that the administrative record should be

3  supplemented pursuant to any of the exceptions.  The record cannot be supplemented with

4  documents the plaintiffs believe will provide "much needed context to evaluate Federal

5  Defendants' decision."  Neither can the record be supplemented with documents plaintiffs

6  argue "are necessary for the Court to evaluate the complex and technical issues."  Rather

7  the recognized exception allows the record to be supplemented with documents that

8  explain technical terms or complex subject matter.  Nor can the record be supplemented on

9  the basis that the plaintiffs perceive that the documents will "provide needed context to

10 evaluate Federal Defendants' compliance with NEPA and are necessary for the Court to

11 evaluate the complex and technical issues related to [Truckee River Operating Model] and

12 its alternatives."  Nor have the plaintiffs shown that the record should be supplemented

13 under any of the four exceptions to add documents they suggest will "provide[] context for

14 the Court to understand the source of rights that TROA purports to alter."  The plaintiffs

15 have not shown that any of the categories of proffered documents should be added to the

16 Administrative Record under any of the exceptions to the rule limiting this Court's review to

17 the Administrative Record compiled and submitted by the defendants.

18     FACA Claim

19     The plaintiffs also move the Court to require that the defendants expand the record

20 with documents relevant to their FACA claim, or allow the plaintiffs to engage in discovery

21 on the claim.  In their complaint, the plaintiffs alleged that the "TROA negotiation process

22 was subject to the requirements of the FACA."  In their motion, the plaintiffs cast their claim

23 to suggest that "the Administrative Record must contain the requisite documentation for the

24 Court to review the collaborative process by which the Federal Defendants drafted TROA

25 and promulgated it as a federal regulation to determine whether FACA's requirements were

26 satisfied."  The defendants oppose the request to expand the record or allow discovery,

4

1    arguing FACA is inapplicable to this case.  The defendants argue that the negotiating

2    parties to a negotiation process do not constitute, and are not utilized as, an "advisory

3    committee" to which FACA applies.  The plaintiffs counter that the issue is not whether

4    FACA applies, but that "the issue presented by the instant motion is whether the

5    [Administrative Record] does in fact contain sufficient information upon which the Court can

6    make that determination of FACA's applicability."  The plaintiffs, however, go on to address

7    merits of the defendants' arguments, asserting that the defendants are "fetishizing the term

8    'negotiation,'" and ignoring that the Settlement Act provided that the Secretary was to

9    negotiate the agreement with the State of Nevada and the State of California "after

10   consultation with such other parties as may be designated by the Secretary, the State of

11   Nevada or the State of California."

12        The plaintiffs' argument is without merit.  Initially, the Court would note that their

13   motion to supplement did not raise or assert that the issue was whether the Administrative

14   Record contained sufficient information to determine whether FACA applied.  Rather, the

15   memorandum in support of the motion assumed that FACA applied, and argued that the

16   defendants' anticipated opposition (that FACA did not apply) indicated that the defendants

17   had failed to include insufficient material in the Administrative Record regarding the

18   defendants' compliance with FACA.  Further, neither the memorandum in support of the

19   motion nor the reply specifically argue the issue of whether the Administrative Record lacks

20   sufficient material to permit this Court to determine whether FACA applies (as opposed to

21   determining whether the defendants complied with FACA).

22        Further, whether the plaintiffs should be permitted additional discovery, or whether

23   the defendants should be required to expand the record, is limited by the claim that the

24   plaintiffs brought.  As noted, their claim rests upon the assertion that the "TROA negotiation

25   process was subject to the requirements of FACA."  They further alleged, in their complaint,

26   that the "Defendants were required to ensure that the TROA negotiating participants'

5

1   advice to the agency would be 'in the public interest,' 'fairly balanced in terms of points of

2   view represented and the function to be performed,' and would not contain members with

3   inappropriate special interests.  This was not done."  The plaintiffs' claim concerns the

4   "negotiation process," and requires a determination that "negotiating participants" constitute

5   an "advisory committee."  Absent from the complaint is any allegation that any of the

6   federal defendants created or formed a group or "advisory committee" of parties who were

7   not participating in the process as negotiating parties.  Also absent from the complaint is

8   any allegation that the federal defendants formed an advisory committee composed of

9   negotiating parties who collectively acted in a separate and distinct role from their role as

10  negotiating parties, which group the federal defendants created for the purpose of

11  obtaining advice regarding the interests of the Secretary in the negotiation of the

12  agreement to be reached with the negotiating parties.  Thus, to succeed on their motion,

13  the plaintiffs must first establish, as a matter of law, that in a negotiation process involving

14  the Secretary, the other parties (each with its own interests) to that negotiation process

15  collectively constitute an "advisory committee" to the Secretary relative to that negotiation

16  process.

17         The plaintiffs have not directed the Court's attention to any authority suggesting that

18  a group of parties negotiating an agreement with the Secretary can also constitute an

19  "advisory committee" to the Secretary regarding those same negotiations.  That the

20  Settlement Act directed the Secretary to negotiate with Nevada and California "after

21  consultation with such other parties as may be designated by the Secretary, the State of

22  Nevada or the State of California" does not establish that "such other parties" could only be

23  consulted as "advisory committee" to the Secretary.  Rather, as alleged by the plaintiffs, the

24  other parties participated in the process as "TROA negotiating parties."  This Court

25  concludes that negotiating parties cannot be, at once, individual parties (with distinct

26  interests) negotiating an agreement with each other and with the Secretary and also

1  collectively constitute an "advisory committee" established or utilized by the Secretary in

2  the interest of obtaining advice or recommendations regarding those same negotiations.

3  The plaintiffs' motion fails as it seeks to supplement the Administrative Record and allow

4  discovery on a FACA claim in which the "advisory committee" is comprised of the parties

5  with whom the Secretary was negotiating an agreement.

6          Accordingly, for good cause shown,

7          THE COURT **ORDERS** that Plaintiffs' Motion to Supplement the Administrative

8  Record and to Require the Defendants to Provide an Annotated Environmental Impact

9  Statement Linked to Documents in the Administrative Record (#74) is GRANTED in part as

10 follows:

11          The Administrative Record is supplemented with the following Supplemental

12 Exhibits as indexed by the plaintiffs, to which the defendants have not objected: 35, 45, 82,

13 94, 161, 170, 172, 181, 182, 184, 198, 218, 219, 277, 298, 313, and 318.

14          The Administrative Record is further supplemented with the following

15 Supplemental Exhibits as indexed by the plaintiffs, which documents the defendants have

16 indicated are already part of the Administrative Record: 33, 41, 50, 79, 118, 145, 151, 158,

17 162, 185, 186, 187, 200, 201, 202, 203, 204, 206, 216, 224, 226, 245, 250, 252, 260, 264,

18 303, and 304.

19          The Motion is DENIED in all other respects.

20

21  DATED this _____ day of March, 2015.

22

23                                              Lloyd D. George
                                                United States District Judge
24

25

26

7